Since the trial court should have directed a verdict against the Dempses on the issue of liability, I agree with the majority's analysis and its resolution of the merits of this appeal. As a matter of law, the case should not have gone to the jury due to the lack of evidence of what caused Ms. Demps to slip and fall. I share, however, the concern noted by the majority over the lack of any African-Americans among the eighteen jurors summoned to the courtroom. Because of its importance to the integrity of the judicial system, I find this issue worthy of additional comment.
A jury need not "mirror the community and reflect the various distinctive groups in the population." Taylor v. Louisiana
(1975), 419 U.S. 522, 538, 95 S.Ct. 692, 702. However, "selection of a petit jury from a cross section of the community is an essential component of the Sixth Amendment right to a jury trial." Id. at 528, 95 S.Ct. at 697. Therefore, "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Id. at 538, 95 S.Ct. at 702. If selection of jurors is based on race, it is incumbent upon a reviewing court to correct the error without regard to prejudice. Rose v. Mitchell (1979),443 U.S. 545, 99 S.Ct. 2993, 3000.
Here, the trial court appropriately conducted an evidentiary hearing to inquire into the Demps's constitutional challenge to the array. The testimony of the jury commissioner established substantial compliance with the procedures of R.C. Chapter 2313 for the random selection of qualified jurors from the list of voters. There was no evidence presented during the hearing on the Demps's pretrial challenge to suggest that their right to random selection of the jury guaranteed by the Sixth Amendment was violated by systematic exclusion of African-Americans.
Still, we should be acutely aware that, even absent evidence of deliberate exclusion, a jury array lacking in members of a particular race may understandably create a strong perception of unfairness. Indeed, the unfairness may not be all perception. Whether justified or not, this sense of unfairness tends to undermine the credibility of the judicial process for a large segment of our community. As noted recently in a report by the Ohio Commission on Racial Fairness, sponsored by the Supreme Court of Ohio and the Ohio State Bar Association, a high percentage of African-Americans shares a common perception of disparate treatment by the courts. And Judge Tyack has observed in his dissent in Phillips v. Value City Stores, Inc. (Sept. 16, 1997), Franklin App. No. 96APE12-1711, unreported, "We live in a time when it is particularly important that the court system not only be fair, but that it be seen as fair."
The difficulty, of course, is in the remedy. Absent a constitutional violation or an error involving a departure from the statutory procedures for jury selection, the system would be equally, if not more severely, compromised should trial and appellate courts attempt to fashion ad hoc solutions. Judicial tinkering with the composition of the jury in a particular case may only add to the perception of unfairness, exacerbating rather than correcting the problem. In my view, therefore, this issue would be more effectively addressed on a systemic rather than an individual level, and is thus more appropriately the job of the legislature or a judicial-administrative body.